UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCIE MCCONNELL,

    Plaintiff,

v.

NATIONWIDE MUTUAL
INSURANCE COMPANY
BENEFITS ADMINISTRATIVE
COMMITTEE,

    Defendant.

_____/

Civil Action No. 17-12869
Honorable Robert H. Cleland
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR JUDGMENT [ECF NOS. 10, 19]**

## I.   INTRODUCTION

Plaintiff Marcie McConnell has sued Defendant Nationwide Mutual Insurance Company Benefits Administrative Committee (Nationwide) alleging wrongful denial of long-term disability benefits from January 1, 2016 onward. [ECF No. 1].[1]  This dispute is governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. [*Id.*]. McConnell moved for judgment, [ECF No. 10], Nationwide responded and

---

[1] The Honorable Robert H. Cleland signed an order replacing the original defendant with Nationwide, and another referring this motion to the undersigned. [ECF Nos. 22, 25].

filed a cross-motion for judgment, [ECF No. 19], and each party replied [ECF Nos. 20, 23].

For the reasons set forth below, the Court **RECOMMENDS** that Nationwide's motion for judgment [ECF No. 19] be **GRANTED**, that McConnell's motion [ECF No. 10] be **DENIED**, and that the decision of the plan administrator be **AFFIRMED**.

## II.     BACKGROUND

McConnell was approved for long-term disability (LTD) benefits for a period beginning on January 1, 2013 for posttraumatic stress disorder (PTSD). [ECF No. 12, PageID.155-56, 161; ECF No. 13, PageID.291-92]. Her PTSD stemmed from an automobile collision in 2007. [*See* ECF No. 12, PageID.193]. Under the "Nationwide Insurance Companies and Affiliates Plan for *Your Time* and Disability Income Benefits" (hereinafter the Plan) (emphasis in original), the maximum duration for LTD benefits for psychological or mental disabilities is 36 months. [ECF No. 17, PageID.792]. Aetna, the plan administrator, requested additional information in March 2015 to determine whether McConnell would remain eligible to receive LTD benefits. [ECF No. 11, PageID.52-58].

In December 2015, after Elana Mendelssohn, Psy.D., conducted a review of the medical record, [ECF No. 12, PageID.183-88], Aetna

determined that McConnell's LTD claim was based solely on PTSD and would thus expire at the end of the month. [ECF No. 13, PageID.295-96]. McConnell appealed that decision, submitting additional medical evidence, [ECF No. 14, PageID.327-46], but Aetna upheld its previous denial in February 2017. [ECF No. 15, PageID.452-59]. McConnell appealed again and included a vocational rehabilitation evaluation and an activities of daily living (ADL) assessment. [ECF Nos. 15 and 16, PageID.471-85]. Based on a review of the medical records by neurologist Ryan Trombly, M.D., Aetna once again upheld its decision to deny McConnell continuing LTD benefits. [ECF No. 16, PageID.503-13]. McConnell timely filed for judicial review. [ECF No. 1].

### III.  ANALYSIS

#### A.

The Court reviews a denial of benefits by the ERISA plan administrator *de novo*, "unless the plan grants the administrator discretionary authority to determine eligibility for benefits." *Deboard v. Liberty Life Assur. Co. of Boston*, No. 2:13-CV-12838, 2014 WL 4064249, at *5 (E.D. Mich. Aug. 18, 2014). "If the plan gives the administrator discretionary authority, a court applies the highly deferential arbitrary and capricious standard of review." *Id.* The plan at issue here gives the plan

administrator discretionary authority, and the parties stipulate that the arbitrary and capricious standard of review applies. [ECF No. 9; ECF No. 17, PageID.758].

"Under this deferential standard, when it is possible to offer a reasoned explanation, based on the evidence for a particular outcome, that outcome is not arbitrary or capricious." *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009). The Court must uphold the administrator's decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence," even if the evidence could support a finding of disability. *Baker v. United Mine Workers of Am. Health & Ret. Funds,* 929 F.2d 1140, 1144 (6th Cir. 1991); *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010).

Since Nationwide both determines employee eligibility *and* pays any awarded benefits, there is a conflict of interest which must be considered in determining whether Nationwide abused its discretion. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). This conflict of interest does not displace the arbitrary and capricious standard of review, but is merely a factor to be considered within that analysis. *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006).

**B.**

McConnell contends that Nationwide's reliance on Dr. Trombly's July 2017 medical opinion to deny her claim at the second appeal level was arbitrary and capricious. First, she argues that as a board-certified physician in neurological surgery, Dr. Trombly is unqualified under the Plan language in assessing her claim. The Plan states that at the second level of appeal, "the review will be done in consultation with a health care professional with *appropriate expertise in the medical field* and who was not involved in the prior determination." [ECF No. 17, PageID.756 (emphasis added)]. McConnell believes that Dr. Trombly's specialization is unrelated to her alleged physical impairments resulting from a 2007 automobile collision, given that her treaters were a physical medicine and rehabilitation physician, a physician's assistant, a chiropractor, and a massage therapist. [ECF No. 10, PageID.45-46].

Nationwide argues that the Plan language does not guarantee a physician with a specific subspecialty. [ECF No. 19, PageID.820]. Though neither party's argument is supported with citations to legal authority, and the Court was unable to find case law on point within this circuit, opinions from other circuits favor Nationwide. The Eighth Circuit rejected a plaintiff's argument that a board-certified occupational medicine physician was

5

unqualified to offer an opinion on the plaintiff's fibromyalgia, finding that the plaintiff "points to no evidence that calls into question the expertise of Dr. Jacobson personally or of a doctor who specializes in occupational medicine to offer an opinion on the condition of fibromyalgia." *Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 582 (8th Cir. 2008). District courts have also rejected similar arguments. *See, e.g., Frame v. Hartford Life & Accident Ins. Co.*, 257 F. Supp. 3d 1268, 1276 (M.D. Fla. 2017) "[C]ase law is clear that ERISA does not require a plan administrator to obtain an opinion from a physician in the same specialty as the plaintiff's physician"); *Klimas v. Connecticut Gen. Life Ins. Co.*, 2005 WL 2994710, at *8 (E.D. Pa. Aug. 17, 2005), *rev'd on reconsideration on other grounds,* 2005 WL 4611913 (E.D. Pa. Nov. 30, 2005) (plaintiff failed to show that plan required particular specialization, or that consulting doctors lacked appropriate expertise); *Ripka v. Hartford Life & Acc. Ins. Co.*, 2012 WL 1110573, at *5 (D. Minn. Apr. 3, 2012) ("Plaintiff cites to no authority which suggests that a particular specialist, in this case a rheumatologist, should have been consulted to determine her ability to work.").

As in *Wakkinen*, the Court finds that McConnell has failed to show that Dr. Trombly individually, or that a neurosurgeon generally, would lack the expertise required to assess a claim based on injuries from a prior

6

automobile collision.

## C.

McConnell also contends that Dr. Trombly's findings were unsupported by the medical record, and for that reason should not have been relied upon by Nationwide in denying her claim. Dr. Trombly reviewed a list of records dating from May 2007 to May 2017. [ECF No. 16, PageID.503-34]. He summarized the most relevant records to the review, noting that physician's assistant Perry Olson evaluated McConnell for anxiety, depression, and back pain in June and December 2012, and in March 2013, and that normal strength was noted at those visits. [*Id.*, PageID.506]. Dr. Trombly also described a record from July 2012 showing that McConnell had normal strength and reflexes, and a spinal deformity at T11-T12 from an old compression fracture. [*Id.*]. McConnell received psychotherapy in December 2013, January 2014 and May 2015 for insomnia, anxiety, and depression, with no mention of back pain in the therapy notes. [*Id.*]. In March 2016, the notes mentioned a "messed up vertebrae in back," and in November McConnell was described as having severe pain that kept her on the couch. [*Id*].

Dr. Trombly summarized the records from McConnell's four visits to Anne Abrahamson, M.D., in 2016, noting that she sustained a vertebral

7

compression fracture at L23 in the April 2007 automobile collision, had trouble exercising, was taking medications for pain and numbness in the left foot and upper back since the accident, and had normal strength, sensation, reflexes, dexterity, and gait. [*Id.*, citing ECF No. 14, PageID.353-58]. Dr. Abrahamson also found that McConnell had difficulty with activities of daily living at home, her back went out regularly, she had "pain attacks and back pain graded 8/10" as well as nausea and vomiting, but Norco worked well to reduce her pain. [ECF No. 16, PageID.506-07, citing ECF No. 14, PageID.359-76].

Next, Dr. Trombly noted that in February 2017, Joseph Rea, M.D., examined McConnell's medical record to date and discussed the case with Dr. Abrahamson, and that she (Dr. Abrahamson) declined to specify any limitations for McConnell [ECF No. 16, PageID.507, citing ECF No. 15, PageID.432-39].[2] Specifically, Dr. Abrahamson reported to Dr. Rea that "there was nothing specific, and that had there been any particular limitations, then she would have placed these in the notes." [ECF No. 15, PageID.436]. Dr. Trombly then described McConnell's lumbar MRI from February 2016 as having "showed schmorl's nodes in L2 with moderate

---

[2] Dr. Trombly also attempted to consult Dr. Abrahamson, but was unsuccessful. [ECF No. 16, PageID.507].

8

disk degeneration." [ECF No. 16, PageID.507].

Dr. Trombly opined that McConnell did not have a functional impairment that would limit physical activities. [*Id.*, PageID.508]. In making this finding, he cited Dr. Abrahamson's notes from April, September and December 2016 in which McConnell had normal strength and sensation, normal reflexes with spasticity, no atrophy, normal dexterity with no tremors, and a normal gait. [*Id.*]. Dr. Trombly indicated that a finding of an impairment might have been supported if there had been findings of instability or severe stenosis on MRI, progressive deformity on x-ray, or neurologic deficits upon physical examination. [*Id.*]. He concluded that McConnell's limited improvement since the car accident coupled with the fact that most traumatic injuries improve over time suggested that the principal limitation was not a structural injury to the vertebral column. [*Id.*].

McConnell argues that Dr. Trombly's conclusions are at odds with the medical evidence. She points to the February 2017 opinion of Dr. Rea, who reviewed the same medical evidence and found that McConnell had chronic low back pain that would limit her physical activities. [ECF No. 15, PageID.437]. Based on this, Dr. Rea suggested a set of functional limitations, which were ultimately found not to preclude McConnell from suitable employment under the terms of the Plan. [*Id.*, PageID.437, 442-

47, 458]. McConnell also notes that Dr. Rea found her injury to be a structural and fixed change, counter to Dr. Trombly's assertion that it was not structural. [*Id.*, PageID.438; ECF No. 16, PageID.508].

The fatal flaw to this argument is that Dr. Rea's opinion was used by Nationwide to deny her request for LTD benefits at the first appeal stage, meaning that any error in crediting Dr. Trombly's opinion due to its inconsistency with Dr. Rea's would be harmless. And McConnell fails to show exactly why, in this disagreement between two qualified medical professionals, Dr. Rea's opinion should be credited to the detriment of Dr. Trombly's. *McDonald v. W.S. Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003) ("Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision."). Here, Dr. Trombly offered a reasoned explanation for his opinion, and McConnell undercuts her own argument by asserting that Dr. Rea's opinion was also "arbitrary and capricious and not supported by substantial evidence in the administrative record." [ECF No. 10, PageID.48].

10

McConnell further argues that Dr. Trombly failed to address the positive clinical findings of Dr. Abrahamson, but she does not specify which positive findings should have been considered or what functional limitations would result from those findings. Dr. Abrahamson's records consistently reflect full strength and sensation in all four extremities, normal range of motion in all four extremities *without pain*, and normal dexterity, tone, movement, and gait. [ECF No. 14, PageID.353-76]. The only recurring positive finding is back pain, which Dr. Trombly does not deny. [*Id.*, PageID.355, 361, 366, 372]. And as noted in his opinion, Dr. Abrahamson declined to suggest functional limitations when contacted by Dr. Rea. [ECF No. 16, PageID.507, citing ECF No. 15, PageID.436].

McConnell also accuses Dr. Trombly of failing to address the positive lumbar MRI results, but he did clearly address them. [ECF No. 16, PageID.507]. She also accuses Dr. Trombly of failing to address the thoracic MRI results, which were negative other than "degenerative disc disease at T9-T10 without evidence of disc herniation, central canal stenosis nor neuroforaminal narrowing." [ECF No. 14, PageID.346]. And McConnell points to evidence from psychologist Amy Trabitz, M.D., that she cannot sit for long periods of time without extreme physical discomfort, [ECF No. 12, PageID.197]; a letter from PA Olson from July 2015 indicating

11

functional limitations, [*Id.*, PageID.193]; and an ADL assessment from occupational therapist Mary Monte indicating severe restrictions, but also finding McConnell to have fair rehabilitation potential, [ECF No. 15 and 16, PageID.471-85].

McConnell's argument that there is evidence that conflicts with Dr. Trombly's conclusion is unavailing because the evidence is not "so one-sided that the decision to deny benefits can be considered arbitrary and capricious." *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 312 (6th Cir. 2010). And unlike in other administrative schemes, there is no "special deference" accorded to a claimant's treating physician in ERISA claims. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). Nationwide was entitled to rely upon other physicians "so long as the administrator does not totally ignore the treating physician's opinions." *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 504 (6th Cir. 2010). And, in fact, McConnell's treating physician, Dr. Abrahmson, found largely normal examination results and declined to impose functional limitations, which constitutes substantial evidence in support of Dr. Trombly's findings. Thus, Nationwide's final decision to deny McConnell continued LTD benefits based on Dr. Trombly's medical opinion was not arbitrary and capricious. [ECF No. 16, PageID.510-13].

## D.

McConnell claims that to the extent Nationwide relied on Dr. Rea's opinion in its decision to discontinue her LTD benefits, this was also arbitrary and capricious. Nationwide's decision on first appeal came shortly after Dr. Rea issued his opinion, and the decision included his suggested limitations, but Nationwide did not explicitly rely on Dr. Rea's opinion. [ECF No. 15, PageID.452-59]. On second appeal, Nationwide relied upon Dr. Trombly's opinion and its own independent review of the medical record to come to its ultimate determination. [ECF No. 16, PageID.510-13]. Dr. Trombly's opinion briefly cited the opinion of Dr. Rea, but it did not adopt or incorporate Dr. Rea's findings, and instead leaned most heavily on Dr. Abrahamson's lack of specified restrictions for McConnell. [*Id.*, PageID.504, 507]. Of further note, the Plan specifies that the medical consultation used in the second appeal must be by a health care professional who was not involved in the prior determination. [ECF No. 17, PageID.756].

This evidence suggests that Nationwide did not explicitly or implicitly rely on Dr. Rea's opinion in its final decision. But in an abundance of caution, the Court also finds that reliance on Dr. Rea's opinion would not have been arbitrary and capricious.

McConnell claims that Dr. Rea's opinions should be declined controlling weight, as "someone who simply reviewed the medical records." [ECF No. 10, PageID.48]. But there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 296 (6th Cir. 2005). And, as noted, there is no "special deference" accorded to treating physicians. *Nord*, 538 U.S. at 825.

McConnell also notes that there exists evidence in the record contrary to Dr. Rea's conclusions, citing the same opinions from Dr. Trabitz, PA Olson, and occupational therapist Mary Monte that she cited in opposition to Dr. Trombly's opinion. [*Id.*, citing ECF No. 12, PageID.193, 197, and ECF Nos. 15 and 16, PageID.471-85]. But as before, the opposing evidence is far from being "so one-sided that the decision to deny benefits can be considered arbitrary and capricious." *Schwalm*, 626 F.3d at 312. Dr. Rea cited to all these medical sources and in fact credited them to a further degree than Dr. Trombly. [ECF No. 15, PageID.432-38]. He found multiple functional impairments stemming from McConnell's chronic low back pain, despite her treating physician Dr. Abrahamson neglecting to offer an opinion on her limitations. [*Id.*, PageID.436-37].

Still, as noted, Dr. Rea's recommended functional limitations did not

14

ultimately warrant a grant of LTD benefits, a finding that McConnell does not challenge. [ECF No. 15, PageID.437, 442-47, 458]. Thus, Nationwide's decision to discontinue McConnell's LTD benefits, based on Dr. Rea's opinion combined with a transferable skills and labor market analysis, [*see id.*, PageID.442-47], was not arbitrary and capricious. Nationwide's determination should be upheld.

### IV.   CONCLUSION

For the preceding reasons, the Court **RECOMMENDS** that Nationwide's motion for judgment [ECF No. 19] be **GRANTED**, that McConnell's motion [ECF No. 10] be **DENIED**, and that the decision of the plan administrator be **AFFIRMED**.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: September 10, 2018

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

15

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 10, 2018.

                                              <u>s/Marlena Williams</u>
                                              MARLENA WILLIAMS
                                              Case Manager